Edward L. JONES, Petitioner,

v.

The STATE OF MONTANA, and E. C. Ellsworth, Jr., Warden, Montana State Prison, et al., Respondents.

No. 1084.

United States District Court
D. Montana,
Butte Division.
Nov. 17, 1964.

James A. Robischon, Butte, Mont., for petitioner.

Arthur W. Ayers, Jr., Asst. Atty. Gen. of Montana, Helena, Mont., for respondents.

MURRAY, Chief Judge.

By order dated November 13, 1963, this court granted petitioner leave to file in forma pauperis a handwritten petition for Writ of Habeas Corpus seeking his release from Montana State Prison where he is serving a sentence of 10 years following his conviction, on his plea of guilty, of first degree burglary in the Eighth Judicial District Court of the State of Montana. As grounds for the petition, Jones alleged the ineffective assistance of counsel, and that he was not informed of and did not fully understand the nature of the charge against him. Counsel was also appointed to represent petitioner.

A brief explanation of why this matter was not summarily heard, determined and disposed of as directed by 28 U.S.C. § 2243 is necessary. Because the handwritten petition was so rambling and inartfully drawn, the court in its order of November 13, 1963, directed appointed counsel to redraft the petition, and granted 10 days for that purpose. Due to prior commitments, counsel was unable to meet the 10 day time limit and obtained a verbal extension of time from the court. Finally, on December 17, 1963, the redrafted petition was prepared and executed by petitioner. However, as a result of consultation with petitioner, counsel determined that much investigation would be necessary before the petitioner was ready for a hearing and so informed the court. An important witness for petitioner as to a critical time element had left Montana and was residing in Pennsylvania, and other witnesses had to be located. It was tentatively agreed between the court and counsel that the matter would be heard in Great Falls, Montana, in January or February while the court was there trying other cases. It developed that the witness from Pennsylvania could not be present in Montana in January or February, but the hope was expressed that she would be available at a later time, and it was understood that counsel for petitioner would advise the court when he was ready for the hearing. This delay was

acquiesced in by the petitioner. In the meantime, it became necessary for this Judge of this court to undergo surgery and he was absent from his office for several months. Petitioner and counsel finally realized that it would be impossible to procure the attendance of the Pennsylvania witness, who incidentally is petitioner's sister, and decided they would proceed to hearing without said witness. Thereupon, the redrafted petition which petitioner had signed on December 17, 1963, was filed on August 28, 1964, and the hearing on the petition was set for September 9, 1964, and was held on that day. However, a deposition which was stipulated to be received in evidence was not transcribed until the end of October, and the deposition and the transcript of the proceedings at petitioner's arraignment, plea and sentence in the State District Court were not filed in this court until November 4, 1964, at which time the matter was taken under advisement. While this matter has been pending far longer than is proper in a habeas corpus case, the delays were generally to permit petitioner to attempt to secure witnesses and prepare his case, and were apparently agreeable to him.

At the hearing on September 9, 1964, petitioner was present and represented by his court appointed counsel, James A. Robischon, Esq., and the respondents were represented by Arthur W. Ayers, Jr., Assistant Attorney General of the State of Montana. Oral and documentary evidence was received and from such evidence, the court makes the following

## FINDINGS OF FACT

### I

On January 7, 1963, in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, after leave of court was first had and obtained, an information was filed charging petitioner, under the name of Edward Lee Wayne Jones, with the offense of first degree burglary, alleged to have occurred in the nighttime on December 24, 1962. Upon his arraignment on said charge he requested court appointed counsel and counsel was appointed and the arraignment was continued until January 10, 1963.

### II

On January 10, 1963, petitioner again appeared for arraignment in the said District Court with his court appointed counsel. Reading of the information was waived, and petitioner pleaded guilty to the charge contained in the information. The record shows that petitioner was handed a copy of the information after the reading of it was waived and before the plea of guilty was entered, but the record does not show that he read the information, or even had time to read it, because as soon as the court noted that petitioner had been handed the copy, his counsel stated that the time for entry of plea was waived and petitioner immediately entered a plea of guilty.

### III

Under Montana law, every burglary committed in the nighttime is first degree burglary, and every burglary committed in the daytime is second degree burglary. Nighttime is defined by the Montana Code as the period between sunset and sunrise. Under Montana law, first degree burglary is punishable by imprisonment in the state prison for not less than one nor more than fifteen years and burglary in the second degree is punishable by imprisonment in the state prison for not more than five years.

### IV

Neither his court appointed counsel, nor the court, nor anyone else explained to petitioner the distinction under Montana law between first degree burglary and second degree burglary or the difference between the punishment provided for first degree and second degree burglary prior to the time the plea was entered, and at the time of entering his plea of guilty, petitioner was ignorant of the distinction between the degrees of burglary and the difference in punishment provided for each.

### V

After petitioner entered his plea of guilty to first degree burglary on January 10, 1963, the time for imposition of sentence was continued until January 17, 1963, at which time in open court, petitioner was sentenced to 10 years at hard labor in the Montana State Prison. Shortly after arriving at the prison, the petitioner, for the first time, learned of the distinction between first and second degree burglary, and on January 27, 1963, 10 days after he was sentenced, he wrote a letter to the sentencing court, seeking either a reduction of sentence or leave to withdraw his guilty plea, on the ground, in effect, that the burglary of which he was guilty and to which he pleaded guilty occurred in the daytime, and was, therefore, second degree burglary rather than first degree burglary. The district court considered said letter as a request to withdraw the plea of guilty, and denied the same without a hearing.

### VI

Thereafter petitioner sought relief in the Montana Supreme Court by applying for a writ of error coram nobis or other appropriate relief, which was denied without a hearing. Petition of Jones, 142 Mont. 622, 387 P.2d 300. Petitioner has exhausted his state court remedies.

### DISCUSSION

Ever since the time he alleges he first discovered the difference, under Montana law, between first and second degree burglary, the petitioner has consistently and persistently maintained, in the State District and Supreme Courts, and in this court, that

1. That the burglary to which he pleaded guilty occurred prior to sunset on the day in question, and, therefore, that he is not guilty of first degree burglary under Montana law; and

2. That at the time he entered his plea of guilty, he was ignorant of, and did not understand, the difference between first and second degree burglary, and that such difference was not explained to him by his court appointed counsel, the District Court, or anyone else.

With regard to the first contention, in this habeas corpus action, the court is not concerned with the guilt or innocence of the defendant. As stated in Curran v. State of Delaware, 259 F.2d 707, 713 (CA 3—1958):

"We point out that in a proceeding such as that before us (habeas corpus) we do not and cannot pass on the guilt or innocence of the defendants. As was said in Chessman v. Teets, 1957, 354 U.S. 156, 165, 77 S.Ct. 1127, 1132, 1 L.Ed.2d 1253: 'On many occasions this Court has found it necessary to say that the requirements of the Due Process Clause of the Fourteenth Amendment must be respected, no matter how heinous the crime in question and no matter how guilty an accused may ultimately be found to be after guilt has been established in accordance with the procedure demanded by the Constitution.'"

However, petitioner's second contention to the effect that he did not understand the nature of the charge against him is another matter. Real notice and understanding by a defendant of the true nature of the charge against him is the first and most universally recognized requirement of due process. Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859; Bergen v. United States, 145 F.2d 181, 187 (CA8—1944); United States v. Davis, 212 F.2d 264, 267 (CA7—1954). Understanding of the nature of the charge is indispensable to a valid plea of guilty. Kadwell v. United States, 315 F.2d 667, 669 (CA9—1963); Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). The court will vacate a plea of guilty shown to have been made through ignorance. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

United States v. Davis, supra, holds that a court is not relieved of its duty to not accept a plea without first determining that the plea is voluntarily made with a full understanding of the nature of the charge and the consequences of the plea by the fact that the accused is represented by counsel.

While the Davis case and some of the other cases cited above are criminal cases in federal courts, they apply equally to criminal proceedings in State Courts because they are speaking of due process, and Section 1 of the Fourteenth Amendment to the Constitution of the United States provides in part "nor shall any State deprive any person of life, liberty, or property, without due process of law."

■ Thus, it is clear that petitioner's contention that he did not understand the nature of the charge against him at the time he pleaded guilty raises a federal constitutional question which this court must decide, if petitioner has exhausted his state court remedies as required by 28 U.S.C.A. § 2254, and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), unless this court is satisfied that the State Court "has, after a full hearing reliably found the relevant facts" against petitioner's contention. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. See Jones v. State of Montana, 232 F.Supp. 771 (D.C.Mont.1964). In the latter event, this court would be entitled to deny petitioner relief on the basis of the State Court determination.

From the record of the proceedings in the State District Court, introduced in evidence at the hearing here, and from the decision of the Montana Supreme Court in Petition of Jones, 387 P.2d 300, it is evident that the State Courts have not "after a full hearing reliably found the relevant facts", for the simple reason that neither court granted a hearing, full or otherwise, on the question of whether or not petitioner, at the time he entered his plea, understood the nature of the charge against him and the consequences of his plea.

Turning then to the evidence adduced at the hearing, the petitioner testified unequivocally that he did not know and was not informed of the difference between first and second degree burglary and the penalties provided for each until after he had reached the State Prison. He specifically testified that neither his attorney nor the court nor anyone else informed him of the nature of the charge prior to or at the time of the arraignment. He likewise testified that the offense occurred before sunset on the day in question, but as above pointed out, the court in this proceeding is not concerned with the time of the offense or petitioner's guilt or innocence of first degree burglary.

Petitioner introduced in evidence as Petitioner's Exhibit 2, a letter which he received from his court appointed counsel, dated April 15, 1963, in response to a letter petitioner had written to counsel. Exhibit 2 states in part:

"Sometime ago you wrote to me relative to the sentence you received in Judge Nelson's court. *The conclusions you arrived at in your letter are correct in that there is definitely a difference between first and second degree burglary.* As you indicate in your letter you informed the court that the entering was done late in the evening. You will recall that you told me that you saw the light on in the house and then went in. *I, of course, presumed, as did the court, that the matter happened at night.*"

Counsel testified by deposition on behalf of respondents, and while he indicates that he himself was satisfied that the offense was first degree, he never testified directly that he informed petitioner of the nature of the offense or the difference between first and second degree burglary. Counsel's recollection of the details of his representation of petitioner at the time his deposition was taken was understandably dimmed by the passage of time. However, his letter, Exhibit 2, was written only three months after petitioner's sentencing

when the case would have been reasonably fresh in counsel's mind, and the above quoted portion of the letter tends to corroborate petitioner's statement that counsel did not advise him of the distinction between first and second degree burglary. Had such advice been given, counsel's natural response to petitioner's letter would have been "You will recall that I explained the difference to you," instead of responding as above quoted.

As part of their return to the writ, respondents filed an affidavit or certificate by the State District Judge who sentenced petitioner, which was received in evidence pursuant to the provisions of 28 U.S.C.A. § 2245. In the affidavit the Judge states that petitioner "was advised at that time by me and by one of the deputy county attorneys as to the time of sunset and his own statement as to the time of the burglary was around 6:00 P.M.," and "that affiant distinctly remembers the information being read to the defendant and he being advised that burglary in the nighttime was burglary in the first degree." However, neither court clerk's minutes nor the reporter's transcript of the proceedings at the arraignment, plea and sentence support the statements in the affidavit, but on the contrary, contradict the affidavit. Both the minutes and the transcript which were filed herein and received in evidence pursuant to 28 U.S.C.A. § 2247, show that the reading of the information was waived, and the transcript shows that the only mention of the time of the offense, was a statement by the Deputy County Attorney on January 17, 1963, at the time of the imposition of sentence, and a week after the guilty plea, that "the facts indicate there was in fact a burglary committed in the nighttime."

Even if it be assumed that petitioner was given the opportunity before pleading to read the information, which is not at all clear from the record, the mere reading of the information by petitioner, in the absence of an explanation of the law with reference to the degrees of burglary, would not change the situation, nor would the passing reference by the Deputy County Attorney to a burglary committed in the nighttime at the time of the imposition of sentence.

The Judge's actions subsequent to the sentencing are also inconsistent with the statements in the affidavit, and negative the possibility that the explanation of the offense to petitioner referred to in the affidavit may have been made at a time when no record was kept. Ten days after he was sentenced, the petitioner wrote the Judge, stating in part, "Since my sentencing, I have learned there is a difference in 1st and 2nd degree burglary. I was incorrectly charged with first degree." Again, if the explanation of the offense referred to in the affidavit had been made, the natural response to petitioner's letter would have been to call that fact to his attention. However, the court treated the petitioner's letter as a motion to withdraw his plea of guilty and denied the motion without hearing, stating "it appearing to the Court that said defendant was represented by competent counsel at the time of his entry of plea, and it further appearing to the Court from a pre-sentence investigation, which the defendant consented to, that the defendant has a long and extensive criminal record."

In denying petitioner's motion for writ of error coram nobis or other appropriate writ, the Montana Supreme Court pointed out that the record indicated that petitioner had sustained a prior felony conviction and that under the Montana prior offender statute, Sec. 94-4713, R.C.M.1947, he might have received the same sentence for second degree burglary with a prior offense as he did receive for first degree burglary, and, therefore, he was not prejudiced. The respondents also make this contention. The short answer to this contention is that a prior conviction was not charged against the petitioner. In State v. Brown, 136 Mont. 382, 351 P.2d 219, the Montana Supreme Court stated: "We think that in the case of a prior

foreign conviction, it must be charged and proven before the court is bound to fix a minimum penalty of ten years." The Brown case held that knowledge of a prior conviction which came to the court's attention only at the time of sentencing on the current conviction did not warrant the imposition of an increased sentence under Sec. 94–4713, R.C.M.1947.

This court is extremely reluctant to interfere with state court convictions, and finds the chore among the most distasteful it is called upon to perform. However, the duty of the court is inescapable where violations of rights under the federal Constitution are involved. Repeating what was said in Jones v. State of Montana, 232 F.Supp. 771, 779,

"The Sanders, Fay and Townsend decisions (Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, [9 L.Ed.2d 837]; and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770) require just that, full attention and careful investigation, including a hearing, of any direct and positive allegations of facts that would indicate that a person is confined to prison as a result of the violation of his rights under the federal constitution. *In the case of state prisoners, this hearing need not necessarily be held in federal courts, but it must be held in federal courts if the state courts do not investigate and hear the claim as required by Townsend v. Sain.*"

From the foregoing Findings of Fact and for the foregoing reasons, the court draws the following

## CONCLUSIONS OF LAW

### I

The court has jurisdiction of this cause under the provisions of 28 U.S.C.A. §§ 2241(c) (3) and 2254.

### II

Petitioner's plea of guilty to first degree burglary in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, was obtained from him without due process of law in violation of his rights under Section 1 of the Fourteenth Amendment to the Constitution of the United States.

### III

That petitioner's confinement to the Montana State Prison pursuant to the judgment of conviction of first degree burglary of the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, is unconstitutional and in violation of petitioner's right to due process of law under the Fourteenth Amendment to the Constitution of the United States.

Therefore, it is ordered and this does order that the petitioner, Edward L. Jones, also known as Edward Lee Wayne Jones, be released from the custody of the respondent E. C. Ellsworth, Jr., Warden of the Montana State Prison, and from confinement in said Montana State Prison, unless within 10 days from the date of this order petitioner be permitted to withdraw his plea of guilty in Cause No. 5166A in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, and plead anew to the charge in that case.

It is further ordered and this does order that in the event the respondents appeal this decision, that petitioner be released from confinement pending said appeal upon furnishing bail in the sum of $5,000.00, or such other sum as may be ordered by the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade.

It is further ordered and this does order that the certificate of probable cause required by 28 U.S.C.A. § 2253 before an appeal from this decision to the Court of Appeals for the Ninth Circuit may be taken is hereby issued, and it is certified that probable cause for such appeal exists.

The court takes this opportunity to express its appreciation to Mr. James A. Robischon for his assistance to the court and to petitioner, and for his excellent performance of his duties as court appointed counsel for petitioner.